## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**JOSE S.,**

> **Plaintiff,**

> **v.**

**KILOLO KIJAKAZI, Acting Commissioner of Social Security,**

> **Defendant.**

Civ. No. 19-19077 (KM)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Jose S. brings this action to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Title II Disability Insurance Benefits ("DIB"). He argues that the ALJ's determination that he is not disabled as defined by Title II of the Social Security Act was not supported by substantial evidence, and that the ALJ erroneously failed to apply the Social Security Administration's "borderline age" policy. For the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I.  BACKGROUND[1]

Jose S. applied for DIB pursuant to Sections 216(i) and 223(d) of the Social Security Act ("SSA") on March 17, 2015. (R. 25.) He claimed a period of disability beginning on February 12, 2015, based on the following physical

---

[1]  Citations to the record are abbreviated as follows:

> "DE" = docket entry

> "R. _" = Administrative Record (DE 11)

> "Tr." = Transcript of Jose S.'s October 2, 2017 hearing before ALJ Leonard Costa (DE 16)

> "Pl. Br." = Jose S.'s moving brief (DE 17)

> "Def. Br." = SSA Commissioner's opposition brief (DE 18)

impairments: 1) diabetes mellitus; 2) diabetic retinopathy and edema; and 3) diabetic neuropathy and hypertension. (R. 25, 28.) Treatment records also indicate that Jose S. complained of back pain. (R. 5.) His application was denied initially and upon reconsideration. (R. 25, 112.) On October 2, 2017, he had a hearing before an Administrative Law Judge ("ALJ") to review his application de novo. (R. 25.) ALJ Leonard Costa heard testimony from the plaintiff, who was represented by counsel and assisted by a Spanish language interpreter, as well as testimony from a vocational expert ("VE"). On January 8, 2018, ALJ Costa issued a decision finding that Jose S. has the residual functional capacity to perform medium work activities except 1) he can have no exposure to unprotected heights or hazardous machinery, and 2) he can perform only occasional near and far visual acuity, though he retains sufficient visual acuity to handle and work with any size objects and would be able to read normal size print. (R. 28-29.) Upon Jose S.'s request, the Appeals Council reviewed the ALJ's decision. On August 23, 2019, the Appeals Council issued a final decision adopting the ALJ's findings and his conclusion that Jose S. was not disabled as defined in the Social Security Act at any time through the date last insured.[2] (R. 4-6.) The Appeals Council's decision constituted the final decision of the Commissioner. C.F.R. § 404.981. This appeal followed.

---

[2]     The Appeals Council indicated in its decision that "electronic earnings queries reveal that the claimant has a date last insured of March 2017," as opposed to December 31, 2016, the date last insured according to the ALJ's decision. As a result, "[t]he hearing decision [did] not include a specific finding for the period from January 1, 2017 to March 31, 2017." The Appeals Council therefore "issu[ed] a corrective unfavorable decision solely to address the un-adjudicated period and extend the Administrative Law Judge's findings through the correct date last insured." (R. 4-5.) The Appeals Council otherwise adopted the ALJ's decision in full. I therefore construe the final decision of the Commissioner to be the ALJ's decision as amended by the Appeals Council.

    To be clear, this Opinion treats the opinion of ALJ Costa as supplemented by the "corrective unfavorable decision" of the Appeals Council as the final, reviewable decision of the Commissioner. *See* C.F.R. §404.981.

II.   **DECISION FOR REVIEW**

   **A. The Five-Step Process and this Court's Standard of Review**

   To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(c), 1382(a).

   Under the authority of the SSA, the Social Security Administration (the "Administration") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process, which is prescribed by regulation. The steps may be briefly summarized as follows:

   **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.

   **Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

   **Step 3:** Determine whether the severe impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive disability benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

   **RFC and Step 4:** Determine the claimant's "residual functional capacity" ("RFC"), meaning "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015).

Decide whether, based on his RFC, the claimant can return to her prior occupation. 20 C.F.R. § 1520(a) (4)(iv); *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the Administration to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

On appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny,* 745 F.2d at 221–222; *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

**B. The ALJ's Decision**[3]

ALJ Costa undertook the necessary step-by-step inquiry.

## Step 1

The ALJ concluded Jose S. had not engaged in substantial gainful activity during the period from February 12, 2015, the alleged onset date, through his date last insured. (R. 27.) As noted above, *see* n. 1, *supra*, the ALJ listed Jose S.'s date last insured as December 31, 2016, when it should have been March 31, 2017. The Appeals Council corrected this technical error in its unfavorable decision, otherwise adopting ALJ Costa's findings and conclusions in full.

---

[3]    Or rather that decision as corrected and adopted by the Appeals Council in its final decision. (*See* n.2, *supra;* R. 4-5 ("The Appeals Council agrees with the Administrative Law Judge's findings under steps 1, 2, 3, 4 and 5 of the sequential evaluation; namely, that the claimant has not engaged in substantial gainful activity since February 12, 2015, that the claimant has severe impairments which do not meet or equal in severity an impairment in the Listing of Impairments, that he is not capable of performing past relevant work and that there are a significant number of jobs the claimant is capable of performing.").)

**Step 2**

The ALJ found that Jose S. had the following severe impairments: diabetes mellitus; diabetic retinopathy and edema; and diabetic neuropathy and hypertension. (R. 23 (citing 20 CFR § 404.1571 *et seq.*).) Appropriately citing to the medical evidence and the administrative record, the ALJ found that Jose S.'s claimed back pain had, at most, a minimal impact on the claimant's ability to perform basic work activities. (R. 28.)

**Step 3**

With respect to the impairments found to be severe, the ALJ determined that Jose S. did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 28.) In particular, the ALJ's discussion of the evidence focused on Listings 2.04 (loss of visual efficiency, or visual impairment, in the better eye)[4] and 11.14 (peripheral neuropathy)[5]. (R. 28.) In addition, the ALJ also noted that "[w]hile there is not a specific listing for hypertension, the listing in 4.00(H)(1) notes that hypertension . . . will be evaluated by reference to specific body systems affected under this listing." (*Id.*)

---

[4]  **2.04 Loss of visual efficiency, or visual impairment, in the better eye:**

A. A visual efficiency percentage of 20 or less after best correction;

OR

B. A visual impairment value of 1.00 or greater after best correction.

[5]  **11.14 Peripheral neuropathy:**

A. Disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities.

OR

B. Marked limitation in physical functioning, and in one of the following:

1. Understanding, remembering, or applying information; or

2. Interacting with others; or

3. Concentrating, persisting, or maintaining pace; or

4. Adapting or managing oneself.

**RFC and Step 4**

Next, ALJ Costa defined the claimant's RFC:

5.      After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that the claimant can have no exposure to unprotected heights or hazardous machinery, could perform only occasional near and far visual acuity, but retains sufficient visual acuity to handle and work with any size objects and would be able to read normal size print.

(R. 28-29.) The ALJ analyzed at length the evidence supporting that RFC determination. (R. 29-31.)

Based on the RFC, the ALJ concluded at Step 4 that through the date last insured, Jose S. was unable to perform any past relevant work, specifically his previous work as an industrial truck operator. (R. 31.) As required, the ALJ considered Jose S.'s position both as he actually performed it and as it is generally performed.

**Step 5**

Considering Jose S.'s age, education, work experience, and RFC, the ALJ concluded at Step 5 that through the date last insured, there were jobs available in the national economy that Jose S. could perform. (R. 32.) The ALJ noted that Jose S.'s ability to perform work at all exertional levels has been compromised by certain nonexertional limitations but found that based on the testimony of the VE and the information contained in the Dictionary of Occupational Titles, Jose S. is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, directing a finding that he is not disabled. (R. 32-33.)

III.    **DISCUSSION**

In his appeal, Jose S. asserts that the ALJ's decision was flawed in two ways. First, he contends that "the Agency failed to apply the correct vocational rule under its own 'borderline age policy.'" (Pl. Br. at 6.) Second, he argues that

the ALJ's RFC assessment—*i.e.*, that Jose S. is capable of performing medium work with certain vision-related limitations—is not supported by substantial evidence. (*Id.* at 15.) I address those arguments in reverse order, starting with a review of the ALJ's RFC assessment before turning back to Jose S.'s argument that his case presents a "borderline age situation" that requires additional consideration by the Administration.

### A. RFC Assessment

According to Jose S., the ALJ's assessment that Jose S. had the RFC to perform medium work subject to certain vision-related limitations was not supported by substantial evidence because the ALJ "announced [the RFC] without first detailing and explaining the specific abilities and limitations by which the exertional category is derived." (Pl. Br. at 23-24.) However, I find that ALJ Costa engaged in an extensive functional analysis in performing his RFC assessment and thoroughly deliberated as to what, if any, limitations the medical evidence revealed in connection with each of Jose S.'s claimed conditions. The ALJ's detailed examination of the objective medical evidence and its bearing on "the intensity, persistence, and limiting effects" of Jose S.'s symptoms indicates that his RFC determination is supported by substantial evidence and that it resulted from his "careful consideration of the entire record." (R. 27.)

*First*, ALJ Costa examined the available medical evidence pertaining to Jose S.'s claims of functional limitations associated with his diabetes. (R. 29.) ALJ Costa observed that "[t]he record reveals that the claimant has carried a diagnosis of diabetes mellitus type II, without mention of complications, not stated as uncontrolled, for at least twelve years as reported by the claimant." (*Id.*) He further noted that although there is "evidence of fluctuating and inconsistent glucose readings," the medical evidence referred to Jose S.'s condition as "unspecified" and without complications, even during instances where Jose S.'s glucose level had been high. (*Id.*) Moreover, the ALJ found that, notwithstanding Jose S.'s claim that he experienced symptoms of diabetic

neuropathy, the record contained no evidence indicating that Jose S. had complained of or sought treatment for such symptoms. (R. 29-30.) More generally, ALJ Costa found that "there are no objective findings, outside of the diagnoses and fluctuating elevated glucose, suggesting that the claimant has extensive functional limitations due to diabetes." (R. 30.) Indeed, he found that "there is no evidence of episodes of diabetic ketoacidosis, cardiac arrhythmias, coronary artery disease, peripheral vascular disease, diabetic gastroparesis, poorly healing infections, sensory neuropathies, or episodes of cognitive impairment." (*Id.*) He also considered notes from Jose S.'s diabetic foot exams and found them "unremarkable." (*Id.*)

*Second*, ALJ Costa considered the medical evidence pertaining to Jose S.'s claims that he experiences severe functional limitations as a result of peripheral neuropathy. ALJ Costa found that while "[t]he records reveal subjective complaints of tingling sensation in feet, spasms in toes and hand numbness," the medical evidence showed that "the claimant exhibited full range of motion in all extremities, no deformities, edema or erythema." (*Id.*) Nevertheless, even though the medical evidence did not "disclose a formal diagnosis of diabetic neuropathy, specific treatment notes or medical indications associated specifically with neuropathy," the ALJ "granted extreme deference to the claimant's complaints in formulating the [RFC]." (*Id.*)

*Third*, ALJ Costa reviewed medical evidence pertaining to Jose S.'s hypertension and found no associated functional limitation. He found that the record discloses a diagnosis of benign essential hypertension for which Jose S. takes prescription medication. (*Id.*) The ALJ also reviewed notes from Jose S.'s cardiovascular examinations and found them unremarkable, as Jose S. "denied chest pain, palpitations, shortness of breath, dyspnea on exertion and orthopnea." (*Id.*)

*Fourth*, ALJ Costa examined the available medical evidence pertaining to Jose S.'s claims of functional limitations associated with his impaired vision. ALJ Costa found that the medical record "discloses a diagnosis of diabetic

retinopathy and edema, which has been treated with eye drops, injections and laser treatment." "[O]ngoing treatment," the ALJ found, "has helped in alleviating, or at least stalling the claimant's visual impairment." (*Id.*) The medical records also show that Jose S. "is able to attend his medical appointments without the need for a companion," as well as "perform activities of daily living without much disruption such as cooking lunch, doing light chores, self-caring and self-grooming." (*Id.*)

    *Finally*, ALJ Costa considered and weighed the medical opinion evidence in the record. Finding in the claimant's favor, he explained that he gave little weight to the opinion of Dr. Gary Spitz, the reviewing ophthalmologist who stated that Jose S. did not have a severe visual impairment, because the evidence did support a severe impairment of diabetic retinopathy. (R. 31.) ALJ afforded some weight to the opinion of state agency physicians Dr. Carl Bancoff and Dr. Jose Rabelo, who concluded that Jose S. "does not exhibit restrictions and limitations which would preclude him from performing work at the medium exertional level." (*Id.*) ALJ Costa also explained that he gave little weight to consultative examiner Dr. Francky Merlin's opinion because Dr. Merlin did not provide a medically-based opinion regarding Plaintiff's ability to do work-related activities. (*Id.*) The ALJ found that Dr. Merlin's limited opinion that Plaintiff was able to "sit, stand, walk, crouch, hear, and speak" did not preclude the performance of medium exertion work and was "consistent with the overall medical records showing that the claimant is able to perform activities of daily living with very few restrictions." (*Id.*)

    I note that in addition to his general argument that the RFC is not supported by substantial evidence, Jose S. makes a handful of specific arguments regarding certain portions of the ALJ's analysis. None of these would change the result. For instance, Jose S. argues that the RFC assessment is flawed because "the decision doesn't tell us how long or how far plaintiff can stand/walk or how much he can lift/carry and for how long." (Pl. Br. at 24.) But this purported deficiency is of no consequence given that the ALJ found

ample evidence in support of the conclusion that "the claimant is able to perform activities of daily living with very few restrictions," including "physical examinations that disclose that the claimant exhibited full range of motion in all extremities" and "no deformities, edema or erythema," as well as diabetic foot exams that were "unremarkable." (R. 30.) Moreover, the ALJ considered Jose S.'s "testimony and reports of daily activities" and found almost no evidence of functional limitation, noting also Jose S.'s testimony that he was able to assist with household chores. As noted above, the ALJ cited the opinion of Dr Merlin that Jose S. demonstrated normal physical function in that Jose S. "is able to sit, stand, walk, crouch, hear and speak." (*Id.* at 31.) Taking all the evidence together, the ALJ found that "the nature and scope of the claimant's treatment does not reflect an intensity or frequency of symptom exacerbation or suggest an inability to sustain regular and continuous work within the parameters" set forth in the RFC. (*Id.*)

Next, Jose S. argues that the ALJ's assessment lacks discussion of what limitations or restrictions are caused by Jose S.'s diabetic neuropathy or certain conditions affecting his lumbar spine. (Pl. Br. at 25.) Again, the ALJ explicitly addressed these conditions and noted that the objective medical record did not disclose any resulting functional limitations. With respect to Jose S.'s diabetic neuropathy, the ALJ found that this condition, although severe, did not meet the severity of any listed impairment because "the records do not substantiate that the claimant exhibits peripheral neuropathy with disorganization of motor function in two extremities" such that it resulted in "sustained disturbance of gross and dexterous movements, or gait and station, in spite of prescribed treatment." (R. 28.) As for Jose S.'s spinal condition, the ALJ did not find the condition to be severe in the first place. The ALJ found that while the medical evidence reveals that Jose S. has been diagnosed with a lumbar sprain and that he has experienced "mild degenerative arthritic changes in the lumbar spine and spondylosis, the records do not signal any aggressive treatments." (R. 28.) Significantly, "no medical expert has limited the claimant as it relates to this condition" (*id.*). In other words, the ALJ did not

11

discuss any limitations or restrictions stemming from these conditions because
there were none.

Lastly, Jose S. argues that the ALJ's finding with regard to Jose S.'s
vision-related limitations is "virtually incomprehensible" because it limits
Jose S. to occasional near and far visual acuity and, according to Jose S.,
"[t]here are no other types of visual acuity." (Pl. Br. at 26-27.) This is simply
incorrect. The limitation imposed by the ALJ is consistent with the
requirements of numerous job categories listed in the Dictionary of
Occupational Titles that require *neither* near visual acuity nor far visual acuity.
Indeed, the three jobs the VE identified as being available in the national
economy and suitable for Jose S. to perform—cleaner II, industrial cleaner, and
drier attendant—do not require near visual acuity, far visual acuity, depth
perception, color vision, or field of vision. *See* Cleaner II, DOT No. 919.687-014,
1991 WL 687897; Industrial Cleaner, DOT No. 381.687-018, 1991 WL 673258;
Drier Attendant, DOT No. 581.686-018, 1991 WL 684215. It follows that the
vision-related limitations the ALJ factored into his RFC determination are
appropriate and reasonable.

Overall, I find that ALJ Costa conducted a thorough functional analysis
based on the objective medical record. While the claimant disagrees with the
ultimate determination, the ALJ's RFC assessment is supported by substantial
evidence and will be upheld.

### B. Borderline Age Situation

Jose S. independently argues that the "final decision of the
Commissioner ignores the agency's own established protocols for adjudication
in an obvious case of borderline age categories." (Pl. Br. at 6.) However,
Jose S.'s case does not present a borderline age situation, so the ALJ did not
err by declining to apply the Administration's policy for deciding such cases.

The Commissioner's regulations state that the Administration "will not
apply the age categories mechanically in a borderline situation." If the claimant
is "within a few days to a few months of reaching an older age category, and

using the older age category would result in a determination or decision that
[the claimant] is disabled," then the Administration "will consider whether to
use the older age category after evaluating the overall impact of all the factors
of [the claimant's] case." 20 C.F.R. §§ 404.1563(b), 416.963(b). Thus, a
borderline age situation exists if two factors are present: 1) the claimant is
within a few days or a few months of reaching an older age category and
2) application of the older age category would result in the determination that
the claimant is disabled.

Here, the first factor is satisfied. Born on June 1, 1962, Jose S. was 54
years old on March 31, 2017, his date last insured. At that time, Jose S. was
categorized as an "individual closely approaching advanced age" (R. 32), but he
was roughly two months away from actually reaching the "advanced age" of 55
years. *See* 20 C.F.R. § 404.1563. As a result, Jose S. was certainly "within . . .
a few months of reaching an older age category." *See* 20 C.F.R. §§ 404.1563(b),
416.963(b).

The second factor, however, is not satisfied. At Step 5, the ALJ
appropriately made his ultimate disability determination by referring to the
Medical-Vocational Guidelines and applying Rule 203.19, which pertains to
individuals who are closely approaching advanced age, have a maximum RFC
for medium work, a limited education, and no transferable skills. (R. 32.)
Applying Rule 203.19 directs a finding of "not disabled." *See* 20 C.F.R., Pt. 404,
Subpt. P., App. 2, § 203.19. Had the ALJ taken the additional step of applying
the Administration's policy for adjudicating cases that present a borderline age
situation and referencing the rule for the next age category, the result would
have been the same. The ALJ would have applied Rule 203.13 of the Medical-
Vocational Guidelines, which pertains to individuals of advanced age with the
same vocational profile, and Rule 203.13 similarly directs a finding of "not
disabled." *See id.* § 203.13.

Because the second factor is not satisfied, this case does not present a
borderline age situation. The ALJ was not required to consider whether to use

the older age category when applying the rules set forth in the Medical-Vocational Guidelines and did not err by declining to do so.

## IV.   CONCLUSION

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**. A separate order will issue.

Dated: August 9, 2023

/s/ Kevin McNulty

_____
**Hon. Kevin McNulty**
**United States District Judge**